Good morning. I'm Judge Gould. I'm presiding today and I'm delighted to be sitting with my colleagues Judge Tallman on my right and Judge Christen on my left. We have only two cases to be argued today, but before we start on those, I so first of all, U.S. v. White is submitted on briefs. Then also U.S. v. Kemp is submitted on briefs. We come to the first case to be argued today, which is Second Amendment Foundation v. Ferguson, the Washington Attorney General, and for appellants, I think we've got Mr., is it Lovejoy, is that the right pronunciation? Yeah, and this case is set for 15 minutes per side, so appellant will start. I can start, but if you want to make a rebuttal argument, yeah, please, please try to stop before you use all your time up. Thank you, Your Honor. I would like to reserve three minutes for rebuttal. I'll try to remind you if you forget, but it's really up to you. You can watch the clock. Of course, if judges are asking you questions, you can continue to answer their questions until you complete whatever idea you're composed. Very good, thank you. Okay, please proceed. For the record, Jack Lovejoy of Cora Cronin on behalf of Second Amendment Foundation, Alan Gottlieb, who is to my left, and the other appellants. Thank you, Your Honors. May it please the Court, the first topic that I want to address today is the issue of constitutional ripeness. What I want to do is talk about what the complaint actually says on this issue, and then talk about the case law that the state, the AGO, is relying on in their briefing. Constitutional ripeness, for our purposes, is basically synonymous with injury in fact, and it is applied less stringently in cases under the First Amendment because of the importance of First Amendment rights. Here, we have been injured. We have sufficiently alleged injury in fact. First of all, Second Amendment Foundation had a number of its associates be told by the Attorney General that they were suspected of illegal acts. Can I stop you there? Yes. Is that the operational disruption, reputational damage? Yes, reputational damage. Okay, so I have, I'm looking, so we're going to the complaint per your invitation, right? So ER 245, I should be looking, and 233, is that right? Are there other allegations apart from the audit and auditors? So the most specific allegation is, yes, that the auditors ceased working, cut off all contact with the Second Amendment Foundation. Okay, so the problem with that one, I'm not saying this couldn't be amended, but the problem, the complaint at ER 333 says, apparently, comma, CDP served accountants with CIDs requesting sweeping. So you, I appreciate the position your client was in, but I think this was deemed too speculative by the district court. Why was that wrong? Why was it wrong to deem it speculative? Well, because you're not really that the CID was served on these folks. It's apparently, you know, apparently the accountants received it. So could you respond? Well, the accountants did receive a CID with a gag order, and that is why they cut off contact with the Second Amendment Foundation. The complaint says, apparently, CDP served the accountants with CIDs requesting sweeping information regarding SAF and so forth. So if you're telling, I don't know if you're telling me you could have alleged this differently or not, but it does say apparently. Well, perhaps we could have written it better. Your Honor, what is alleged as apparent is the sweeping level of information requested, because we don't have the CID. We do know that the CID was issued and that there was a gag order in it, and that that is why contact was broken off. For me, this is the most concerning allegation, and at ER 245, it says, again, to the complaint, it says the investigation, quote, has damaged the plaintiff's reputations by suggesting to third-party recipients they may have violated the law. Vendors who have received CIDs may cease to do business with plaintiffs. So again, the district court dismissed this as speculative. What's your response? Why was she wrong about that? Well, Your Honor, there is a concrete part, and then there is the allegation that this could happen again. The one vendor who did, in fact, cut off contact was our accountant auditor. But where does it ever say that the accountant auditor failed to complete the audit because of this? I didn't see that. Did I miss it? I believe it was 38. Your Honor, I'm sorry, but I'm not putting my finger on the paragraph right now, but I believe it is the paragraph you were reading from where we do specifically allege that the auditor received the CID and, as a result, cut off contact with us. Well, I've looked at that paragraph and also the one at 234, and again, it's CID, third-party recipients who could easily decide. So again, I'm not saying this couldn't have been amended, but I struggle to find fault with the district court's rulings that the complaint doesn't quite get there, and I just wanted to give you an opportunity to respond. Well, I guess the last response I'll have on that is, look, if there was an opportunity to amend and there is any lack of clarity about the fact that the CID issued to the accountant caused them to cut off contact with us, we will fix that because that is what the allegation is supposed to be. Okay, thank you. Thank you. Counselor, did you refile somewhere? Did you seek to amend? Did you... So in... I'm sorry, I didn't mean to... No, go ahead. I mean, the problem here is that, as I understand the dismissal, it was without prejudice. So that would not prevent you from filing a motion to amend or from filing the action in a different court. Well, Your Honor, the dismissal was without prejudice, but it was not with leave to amend. We had requested leave to amend in our opposition to the motion to dismiss. I understand that, but if it was without prejudice, why couldn't you simply file a companion action in King County Superior Court, which, as I understand it from the record, issued the gag order? Well, I suppose we could have filed another lawsuit in King County, but we're not required to. If the court erred, the court erred, and we have a right to... The question is, did you have a remedy? And it seems to me if the dismissal was without prejudice, then you haven't been injured, and you can take further action. Well, what we've been denied is the federal forum, which is our right to have. Wait, you're not saying, I think, so just so we can get this all out and you can grapple with it all, I think it was simultaneous, dismissal without prejudice and judgment entered the same day. That is exactly the next thing I was going to say, yes. So then could you circle back to Judge Tallman's question? Understanding that, could you circle back to Judge Tallman's question? The part about could we refile in King County? Well, sure, we could have, but... I mean, doesn't the CID statute provide for the opportunity to initiate actions in Superior Court in order to challenge both the issuance of the CID and, in this case, the issuance of a gag order? Well, sure, but that is not the suit that we brought or that we're trying to bring here. What the Consumer Protection Act allows is for us to challenge the CID. Well, that's great. That's part of what we want to do, but it does not allow for an action for damages. And this is where we're different than the Twitter case, the SPU case, the Google Rehood case. This is not a case where a CID was issued, and on day one, we filed suit, and we just said, we don't like the CID. I guess the concern I'm having with your position is CIDs get issued all the time when agencies are conducting investigations, and the investigation may very well lead nowhere, and that's the end of it. And so if we adopt the rule that you're urging upon us, I think what you're asking us to do is to declare that when a CID issues and, in your view, is a baseless investigation, that constitutes a constitutionally cognizable injury if your accountants don't want to talk to you as a result of receiving the CID. And it seems to me that's a pretty broad expansion based on what I think is a bit of a speculative injury at this point. So, Your Honor, I would refer you to the case of White v. Lee from 2000 in the Ninth Circuit. And there what you had was a citizen's group who didn't like a planned real estate development, so they engaged in First Amendment activity. And so the local HUD office engaged in an investigation against them because they didn't like that First Amendment activity. And the White v. Lee case does a very good job of discussing why it, as opposed to every single instance where there's an investigation, did involve a cognizable injury. And they go through how the investigation went on for eight months. The investigation was substantially motivated by this dislike of the First Amendment activity. The investigation threatened subpoenas. The investigation accused them of illegal acts. And that's the case we have here. I'm not saying... Well, you said accused them of acts. As I understand a CID, it's akin to a grand jury subpoena, although it's an agency rather than the grand jury. And we're conducting, in essence, an enforcement investigation that may or may not lead to prosecution. And prosecution comes in the form of some sort of a penalty assessment or a complaint by the agency as a result of the investigation that the target or subject of the investigation has actually violated. In this case, I guess it would be the charitable foundation statutes and regulations of the state of Washington. That hasn't happened here yet, right? Right. No such enforcement action was ever initiated by the Attorney General. Right. So I'm back to my question. If the Attorney General is not given some leeway in terms of investigating, following up on leads and so on, without fear that the AG is going to get sued every time they issue a CID, we're doing some substantial harm to the enforcement of statutes and the implementing regulations that are enacted under them. So this is exactly the nub of this case. Yes. In one view, you could say, well, we can't have a lawsuit every single time that there's a CID, and I'd agree with that. Okay. On the other extreme, we can't have executive officers of governments with investigatory power decide, I dislike that First Amendment activity. So I'm going to use my investigative power to impoverish that person. I'm going to cause them to do a bunch of work under threat of sanction, which is in the CPA. Under our case law, this wouldn't be compelled. I'm not talking about Seattle Pacific, but under Paxton, I shouldn't have interrupted you. We'll come back to that. Go right ahead. Well, sure. Your Honor, I will take a detour to just address that point. When you get a CID, it is not like SPU where it's a letter that's a request. I recognize that. That's why we're not looking at Seattle Pacific. It is a demand. It does say that if you don't comply, we're going to sanction you. I appreciate that, but can you distinguish it from Twitter? I realize it's a different statute, but I know that it's materially different. Well, yeah, it is different because in Twitter, the court explicitly says you could ignore that CID without consequence, that Texas CID. Not so in Washington. Well, it's not clear in Washington, right? Because the state has taken different positions here. Well, the state has taken different positions in this case and in other cases, but if you read the CPA, what it says is you apply the discovery rules. Under CR 37 in Washington, if you ignore a discovery request, you get sanctioned. I think you and I have a different read of the discovery rules, but that would be a further detour from Judge Tallman's question. Sure. I don't want to go down that rabbit hole. No struggling with your answer to my question. Well, I'm sorry. It's a tough issue. I'll grant you that. A grand jury, for example, can issue a subpoena and require the production of documents, which is very intrusive and very expensive and very time consuming. There may or may not be fire where there's smoke, but we aren't going to know until the subpoena is complied with. And if the recipient of the subpoena or the subject of the investigation thinks the government is overreaching, you can move to quash the subpoena. You didn't do any of that here. You could have, I guess, theoretically gone to superior court to try and challenge the issuance of the CID, whether you would have succeeded or not, I guess is a question. Right. When the CID was issued, we didn't have a discovery rule based objection to it. And we didn't have the year's worth of evidence that this was just a politically motivated investigation. So there was no reason at the time to go and say, don't enforce the subpoena or don't enforce the CID. It was only once it had been going for a year and they were still demanding more depositions that it became clear that we really do have a First Amendment claim here. That's why we moved when we did. And simply moving to quash the CID at that point would not have actually protected our First Amendment rights because we had suffered damages already. And to get back to your previous question, the question of leeway. All right. There's got to be leeway. And what I submit to you, Your Honor, is that the case of White versus Lee really shows us where that leeway is. OK, sure. I think your argument, because you're about out of time, I think your argument is or your answer to Judge Tolman's question, if I understand it correctly, is that you voluntarily complied. You didn't object anyway. And then, of course, the state has taken different positions about whether those are waives. I've put a pin in that. But you didn't object. And then it went on and on and on. So at the time that window closed, at least pursuant to the state's original position about it closing, you hadn't spent one hundred thousand dollars yet and hadn't been, you know, so many so many months. Are you saying that just it ripened at some point? It became excessive and abusive? Yes. All right. Well, thank you. That wasn't entirely clear from your response to Judge Tolman's question. I think it's very central to the case, hence my request for clarification. I'm glad you figured it out. Thank you. Counsel, the red light means your time's up. However, wait, because the judges gave you lots of questions to answer and you initially wanted to make some rebuttal. I'm going to give you two minutes extra time. For thank you. Good morning, Your Honors. May it please the court. Alexia Durer, representing the attorney general of Washington and Assistant Attorney General Joshua Studer. Counsel, just for your information, if you want the extra two minutes also, we would add that to your clock. Okay. Thank you, Your Honor. I'm joined at council table by co-counsel Andrew Hughes. The attorney general started an investigation of the Second Amendment Foundation after reviewing what appeared to be self-dealing in the Second Amendment Foundation's public tax filings. But before the attorney general determined whether these financial dealings violated state charities laws, the Second Amendment Foundation sued to block the investigation. Not only are these claims premature, but they also fail to show that they've been harmed by receiving civil investigative demands that are not self-enforcing. The district court was correct in determining that these claims are both constitutionally and prudentially unripe. I'd like to turn first to constitutional ripeness. Of course, this court can affirm dismissal on any basis supported by the record. And this case is on all fours with Twitter v. Paxton. Like in that case, the Second Amendment Foundation fails to sufficiently allege injuring fact because they never allege actual chill. So their complaint uses phrases like, and this is a quote, hopes to chill or is designed to chill. And that's simply not enough. That's right. Can I cut to the chase on this? Because I think our panel has looked hard at this and there's four, as I look at the complaint, I want to give you an opportunity to respond. There's four claimed harms. One is chilled speech. One is a compelled disclosure of private information. And I struggle to distinguish this case from Twitter. So I think both of those claim perhaps amendment would be futile because I think after Twitter, we can't say that either was compelled. These would be voluntary responses. Do you agree? I agree, Your Honor. I think Twitter makes clear that there's sort of two possibilities of harm. One is an allegation of First Amendment chill, which would be shown through self-censorship. They simply haven't alleged that here. The second would be harms that supposedly result from compliance with a civil investigative demand. But again, Twitter makes clear that those are voluntarily, excuse me, voluntarily incurred. And so they're not legally cognizable. Okay. So what about damage to reputation or operational disruption? I've been pretty transparent that I think as alleged, I've really looked at the allegations in the complaint here and we can go over them if you want, but I think they fall short. In other words, I don't find fault with the district court's reasons for finding these particular allegations speculative or in another case vague. Or if you just take that as a hypothetical, because after all, I'm only one of three up here. What I can't figure out is why they wouldn't be entitled to leave to amend. They had no opportunity to amend here. Your Honor. I mean, as to those two, right? How can we say that amendment as to those two claimed harms would be futile? Yes. Well, first of all, I agree that the sort of reputational harms that they allege are speculative and insufficient. Leave to amend would be inappropriate here for a couple of reasons. First of all, this is the second time that they filed their complaint. They never had an opportunity to amend after the district court ruled counsel. That's correct. But the district voluntarily dismissed the first time it hadn't even ruled upon. Right. Right. Yes. But then they, at that point, the investigation had been ongoing and they certainly could have alleged additional harms the second time that they filed. When they came back. So, right. So they refiled in state court, then you removed again to federal court and they filed a new complaint. I think the only real difference I saw was not a lack of a younger allegation, but they hadn't had a ruling on anything. So they're not prompted. They hadn't been given a ruling from the court that the existing allegations had fallen short. That's correct, Your Honor. But the attorney general's office did file a motion to dismiss the first time around. And so they were certainly aware of the state's argument that their complaint was insufficient under Twitter because it failed to allege harm. But I'm not talking about Twitter. I'm talking about, sorry, but Twitter, you know, goes to the voluntarians at the response council. Right. And I'm not, those are two I'm not pushing back on of their four claimed harms, but they have two others where the district court didn't rely on Twitter, but relied on, you know, the allegations actually pled, pleaded were speculative or vague. And as I said, I think that's right. Probably as to those allegations, I just can't figure out why they wouldn't have been entitled to an opportunity to admit. I think ultimately the district court dismissed the case without prejudice. And so as a, and enter judgment the same day. Yes, but as a practical matter, if their claims become ripe, they can bring them again. They're not, they're not barred from continuing to bring claims. And the reality is that this case, there was no, there was no way the district court could have done anything else, right? Under our case law, the dismissal had to be without prejudice because she was dismissing for lack of subject matter jurisdiction. So we can't read anything into that. I guess, I guess my point, Your Honor, is that there, there hasn't been any change to the underlying investigation. And so the second amendment foundation hasn't made any showing at all that there are additional facts that they could allege. Well, they haven't been given an opportunity to do that. There was no opportunity to amend. I don't know if they can. I'm not suggesting they can. I am suggesting this would be a pretty sharp departure from our case law, I think, that requires one opportunity to amend, at least for this kind. You know, we have, we have case law that certainly says if it's apparent that a complaint was dismissed because any amendment would be futile, we can affirm on that basis. And that's why I'm, I'll grant you as to two of these four harms. I see no error at all, but on the other two, I'm, I'm curious. I would still submit to this court that amendment would be futile because it's just unclear how that they would salvage their claims at this instance. When they first filed this complaint, the investigation had been ongoing for at least a year. There has been no, no changes to the underlying investigation. And so they, they really don't have additional facts. They would have put them in the complaint. We don't know that. We don't know that they don't have additional facts. That's my problem. Or maybe you do. Is there something where I can see that? I, I don't know if there's anything specifically in the record here, but... Okay. All right. I'll stop. I think I've, you've answered my question. Color me skeptical. Okay. I'm struggling with the same, with the same issue. I mean, it seems to me that our case law really addresses the situation where a court dismisses with prejudice and without leave to amend, and fails adequately to justify the decision, that decision. And only then do we declare that it's an abuse of discretion. Your answer to Judge Christian's question seems to be what's not really an abuse of discretion because leave to amend would be futile. But the court never said that. And it just dismissed and then filed judgment immediately. And that's what I'm struggling with here. Yes. But I think ultimately the end result is the same. So the Second Amendment Foundation isn't prohibited from continuing to, from, from litigating these claims if they ever become ripe, which... I guess the only concern would be the statute of limitation, which is, I'm not sure if that's a problem or not, given the fact that the CIDs are still outstanding. Yeah. There's, there is not a statute of limitations issue here. So the, if the Attorney General's office ever petitions to enforce a civil investigative demand or determines that the Second Amendment Foundation has violated the law, the Second Amendment Foundation would have the opportunity at that point to raise their defenses and to raise these issues then. And that's precisely why this case just isn't prudentially ripe. It's, it's just, we're not in that place yet. What is the statute of limitations for violation of the Charitable Solicitations Act? I, I don't know the answer to that, Your Honor. Under the Consumer Protection Act, there, the state is, is not really prohibited from bringing... Unlimited? Open-ended? That's my understanding, Your Honor. Wow. I thought we only did that in homicide cases. Well, I think this just goes to the importance of the state's ability to investigate potential violations of the law under the Consumer Protection Act. I assume they have to be ongoing, don't they? I mean, are you telling me that 20 years after the fact, the state can initiate enforcement actions for a violation that occurred to a regulation 20 years ago? Well, I think that would be, I, I think that would be unlikely just given state resources and... That's his argument, counsel. You know, again, we're at the baby, baby stages of this. We've got a complaint, we've got nothing more than a complaint, not even an amended one. And so his position is, at some point, recognizing the utility of this statutory scheme, at some point it could become abusive. I don't know if they're there or not. I don't know if they can get past a motion to amend, but that's, I think that's the question Judge Tolman's asking you to engage in. What if it, what if 20 years goes by and it continues to be ongoing and third parties were to... It's a silly hypothetical, I recognize. But you know, at some point, why is that not actionable? Your Honor, there's no constitutional right not to be investigated. So without an allegation of actual chill, there's, there's no harm from the mere fact that an investigation is ongoing. Again, I'm not, I'm not pushing back on chill. But that... I mean, we're starting to get into selective prosecution, are we not? In other words, there does come a point where we do look to the motive of the prosecutor and ask, well, why did the prosecutor charge this defendant for conduct that was engaged in by this subject, but he wasn't charged? That is certainly the, that's kind of the flavor of the complaint here. But ultimately, the Second Amendment Foundation is bringing a First Amendment retaliation claim. And that's why this case falls squarely under Twitter. The CID statute here is, is materially the same as the one in Texas. We're in a very same, similar procedural posture. And so the case just is not constitutionally ripe. And it's also not prudentially ripe at this stage. So the, the Consumer Protection Act provides, you know, multiple options for a CID recipient to raise concerns that they might have. And at this stage, we, the Second Amendment Foundation simply has not sufficiently alleged. And I guess theoretically, if you do bring an enforcement action, at that point, the target or subject of the investigation now has a court that it can go to, to raise the claims that they want to raise. What, what court? In, in the enforce, if an enforcement action is actually commenced. Yes, that's correct. A complaint is filed, alleging violations of the regulations or criminal charges are, are filed for, if there are criminal provisions in the charitable solicitation. I'm not following what court you're referring to, because they're being denied access to the federal forum. Are you suggesting that they would file in Superior Court or have I missed your, missed your response to Judge Tomlin's question? So the case, if the, if the Attorney General's office petitioned to enforce, it would be in state court. Right. If the Attorney General's office filed an action alleging that there had been a violation of law, that could be in state or federal court. Probably state though, right? Likely state. It depends on the claims. If there are federal claims, you know, removal would be an option at that, at that stage. Okay. And, and I think also it's important to note that Twitter sort of leaves the door open for, for a situation where a recipient, a CID recipient has sufficiently alleged to be able to bring an action. There's also, you know, pre-enforcement standing, but that's just not the case that we have here. There would need to be additional facts in the record, far more extreme facts. And the Second Amendment Foundation just simply hasn't alleged that they've been harmed. And your best option for why they shouldn't be allowed to amend is, I mean, your best answer is, is what, please? Amendment would be futile, Your Honor. There's been no changes to the underlying investigation. So there's no additional facts that they could amend to save their complaint. Not in a great position to say what changes they have experienced vis-a-vis third-party recipients of the, of the CID. That's the, that's the hitch, but I think you and I have exhausted this subject. I'll leave it alone. I do have one final question for you. And I want to say, I fully endorse the notion of moving that lectern up and down to adjust your height, but you do realize now the clock has, has disappeared from our site. So I can't tell if this is, if I'm asking you a question. Does it need to be higher? No, but you'll have to tell me whether or not it's... The little clock is hiding behind your iPad. Oh, maybe I have one here. You have a little clock, yeah. Great. Who knew? Terrific. So here's my question. I think after Paxson, the state AG argued in a, this is in the briefing, the state AG argued in another case that because there hadn't been an objection, you know, within the period of time permitted by the civil rules that the objections were waived. So my question for you in this case is, if you were to go forward, can they object? You seem to be assuming that in response to Judge Tallman's question, but I, that is not the position the state has taken elsewhere. Yeah. So the, the Consumer Protection Act allows CID recipients to raise objections to the CID itself within 20 days. And the legislature provided that as an option. It's ultimately up to the legislature or a court to enforce that, to enforce that provision. If a CID recipient fails to raise their objections, they certainly run the risk that a court will later find that they've waived them, but that doesn't preclude a court from hearing those objections. But I'm asking you, what is the state's position, please? Is the state's position that they have waived their objections? The state's position is that the 20 days, no, the state's position is that they can always raise their constitutional defenses in an enforcement action. The, the 20 day provision is really tied to the scope or the terms of the CID. And that's not really an issue in this case. Their, their claims are really a constitutional defense. And so those could be raised if this case ever becomes potentially ripe. I don't have any further questions. I don't either. All right. If there are no further questions, we ask this court to affirm the district court's dismissal or at the very least order the case remanded to state court as constitutionally unripe. Thank you. Thank you. I'm searching for my button. Oh, to raise it. Ah, there we go. And the clock returns. Is the clock visible? Yes. Okay. Wonderful. Thank you. Let's be clear about something. If the court adopts the reasoning of the AGO and the district court, there will be a roadmap for executive officers to make sure that no claim is ever ripe. You can engage in whatever kind of retaliatory investigation you want. And as long as you never close it, then there's never going to be a ripe claim. That, that is the meaning of the district court's case. I hear your complaint. I do think it's a risk, but ultimately courts exist to hear your defenses when an enforcement action is filed. And, and we're not there yet. And I don't know that we're ever going to be there based on where this investigation is going. And if we're never there, your honor, this is the point. Then second amendment foundation will never get to bring a claim for the harm that it has already suffered. And, and I'd refer you to the Arizona board of regents case that says, look, if you lose some money because you've, uh, you've suffered a retaliation for your first amendment activity, if you lose some money, that can be a first amendment harm because you would have otherwise used that money for first amendment speech. That's one of our core allegations here. It doesn't matter that we're talking diversion of resources. Absolutely. And no matter how much advocacy, the second amendment foundation is engaged in right now, it's a hundred thousand dollars less than what it would have been without the retaliatory investigation. And they're going to sue. So let's just not do it. We'll just be denied. And that's, that's not fair. It means that our first amendment rights don't exist anymore. Um, we, uh, and so my second point that I guess I've already made is we do allege that we have had our first amendment activity chilled to the tune of a hundred grand council. You are, you're now over the extra two minutes of time. Oh, I'm over. Thank you, Your Honor. I appreciate it. You could, we're not going to deal with this. Like Justice Rehnquist used to do at the Supreme court, making people stop the mid sentence. So you can complete your sentence. The only, the only last thing I was going to say, Your Honor, is that on the point of voluntary, uh, compliance, we never voluntarily complied with a violation of our first amendment rights. As soon as we realized that's what's going on, we stopped. Thank you. Thank you, counsel. The second amendment foundation case shall now be submitted and the parties will hear from us in due course. And I thank and congratulate counsel on both sides of the case for their illuminating and helpful arguments.
judges: GOULD, TALLMAN, CHRISTEN